**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MICHAEL W. McDEVITT,

                      Plaintiff,

          - against -

SUFFOLK COUNTY, SUFFOLK COUNTY
POLICE DEPARTMENT, GLENN
TORQUINIO, and SUFFOLK COUNTY
POLICE OFFICERS JOHN and
JANE DOES #1-10

                      Defendants.
-----------------------------------------------------------X

**ORDER**

CV 16-4164 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

Presently before the Court is Plaintiff's motion to compel the appearance of non-party Wayne Schneider for a deposition or, in the alternative, to permit counsel to file a formal motion to hold Mr. Schneider in contempt of court. DE 42. Plaintiff's motion is GRANTED, in part, to the extent that it seeks enforcement of the document subpoena.

**I.     RELEVANT BACKGROUND**

Plaintiff brought this action against the Suffolk County defendants under 42 U.S.C. Sections 1983, 1985 and 1986, for alleged violations of his 4th, 5th and 14th Amendment rights. *See generally* Amended Complaint ("Am. Compl.") [DE 25]. Plaintiff alleges abuse of process, assault, battery, false arrest, malicious prosecution, excessive force, intentional infliction of emotional distress and negligence. *See id*. Counsel for the Plaintiff filed a one-page letter motion requesting that the Court hold non-party Wayne Schneider in contempt for his failure to appear at the deposition duly noticed by counsel. DE 39. The Court denied the motion without prejudice on the grounds that the appropriate procedural remedy was a motion to enforce the

subpoena served on the non-party, not a motion for contempt. DE 40. The Court explained that counsel was free to file a letter motion setting forth the factual background concerning the subpoena, as well as the supporting case law on which the Plaintiff is relying for relief. *Id*. Counsel did so and it is that motion which is currently before the Court. *See* DE 42.

Plaintiff's counsel explains that "upon information and belief," Mr. Schneider is an eye-witness to part of the conduct which gave rise to this suit — Defendant Glenn Tarquinio's holding Plaintiff down on the ground at gunpoint. Counsel represents that he served Schneider with a subpoena directing Schneider to produce the following materials on June 23, 2017 at 10 a.m., at the law office of Cory H. Morris, Esq., 33 Walt Whitman Road, Suite 310, Dix Hills, New York 11746:

> Any and all cell phone videos, electronically stored information, photographs, films, slides, videotapes and/or any other forms of reproduction depicting events at 7 [not discernable] Lane, Holbrook on April 2, 2014 as described in the complaint, Michael W. McDevitt, Brittany Barton, Debra Debek, Mary Finchum and/or Michael Salamone.

Counsel further states that he sent Schneider, via overnight mail and first-class mail, correspondence dated June 21, 2017, which included copies of the subpoena, affidavit of service and check for payment of the witness fee. The mailing label for counsel's overnight parcel shows a ship date of June 21 and a receipt date of June 22, 2017. The written correspondence included in the mailing explains that Plaintiff's counsel attempted to contact Schneider via telephone on June 19, 2017, June 20, 2017 and June 21, 2017 to confirm his appearance at the deposition. Counsel went on to state that he expected Schneider to appear at his office for his deposition testimony on the date shown in the subpoena.

Counsel for the Plaintiff and the Defendants convened, as scheduled, on June 23, 2017 at 10 a.m. at the office of Plaintiff's counsel. According to representations made by Plaintiff's

2

counsel on the record, Schneider returned the call on June 21 but counsel missed it. Counsel called Schneider back and, this time, he answered. Counsel says that Schneider broke into a series of profanities: "Do not f*cken call me," and "I will have your clients f*cken prosecuted." June 23, 2017 Transcript [DE 42-4], at 11-12. According to the June 23 transcript, Schneider failed to appear at the deposition. *See generally id.* Plaintiff's counsel requests that the Court compel Schneider to present himself on a subsequent date to provide testimony, or, in the alternative, permit counsel to file a formal motion to hold Schneider in contempt of court.

## II.    PLAINTIFF'S MOTION TO COMPEL COMPLIANCE

### A.    *Legal Principles*

#### 1.    **Federal Rule 45(b)**

Service of a subpoena is governed by Rule 45(b)(1) of the Federal Rules of Civil Procedure which states, in pertinent part, that "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by the law." Fed. R. Civ. P. 45(b)(1); *see JP Morgan Chase Bank, N.A. v. IDW Group, LLC*, 08 Civ. 9116, 2009 WL 1313259, at *2 (S.D.N.Y. May 11, 2009). The language of the rule itself, namely the use of term "delivering," without any further qualification fails to make clear whether personal service as opposed to some form of alternative service is required. *See Cadlerock Joint Venture, L.P. v. Adon Fruits & Vegs. Inc.*, No. 09-CV-2507, 2010 WL 2346283, at *2 (E.D.N.Y. Apr. 21, 2010) ("The language of [Rule 45(b)(1)] does not make it clear whether 'delivery' necessitates in hand, personal service or envisions other methods of service."), *report and recommendation adopted by* 2010 WL 2346276 (E.D.N.Y. Jun. 8, 2010). Despite this ambiguity, the Second Circuit has not yet addressed this issue. *See JP Morgan Chase Bank, N.A.*, 2009 WL 1313259, at *2 (noting that

3

"[t]here is no Second Circuit case law interpreting the Rule 45 requirement of 'deliver[y]'. . . .") (internal citation omitted) (alternations in original); *Sec. & Exch. Comm'n v. Pence*, No. 15-7077, 2017 WL 4326077, at *4 (S.D.N.Y. Sept. 28, 2017) (quoting *Kenyon v. Simon & Schuster, Inc.*, No. 16-327, 2016 WL 5930265, at *3 (S.D.N.Y. Oct. 11, 2016)) ("'There is no Second Circuit case law interpreting the Rule 45 requirement of delivery as requiring personal service.'").

In light of such silence, a split within the Circuit has developed as to whether the Rule 45 delivery requirement implicitly mandates personal service or, in the alternative, whether substitute service is permissible. *See Sheet Metal Workers' Nat'l Pension Fund v. Rhb Installations, Inc.*, No. 12-2981, 2016 WL 128153, at *2 (E.D.N.Y. Jan. 12, 2016) (citing *Simmons v. Fervent Elec. Corp.*, No. 14-CV-1804, 2014 WL 4285762, at *1 (E.D.N.Y. Aug. 29, 2014); *Cadelrock Joint Venture, L.P.*, 2010 WL 2346283, at *2-4) ("Courts are split as to whether [Rule 45(b)(1)] requires personal service."). Thus, although "many courts have interpreted the language of Rule 45 as authorizing only personal service," *see Briarpatch, L.P. v. Geisler Roberdeau, inc.*, No. 99 Civ. 9623, 2006 WL 1311967, at *1 (S.D.N.Y. May 12, 2006) (citing *Agran v. City of New York*, No. 95 Civ. 217, 1997 WL 107452, at *1 (S.D.N.Y. Mar. 11, 1997), more recently "a growing number of courts . . . have held that 'delivery' under Rule 45 means a manner of service reasonably designed to ensure actual receipt of a subpoena by a witness, rather than personal service." *Cartier v. Geneve Collections, Inc.*, No. 07–CV–201, 2008 WL 552855, at *1 (E.D.N.Y. Feb. 27, 2008) (citations omitted); *see, e.g.*, *Cadlerock Joint Venture, L.P.*, 2010 WL 2346283, at *3-4 (finding that the language of Rule 45 supports service via alternative means but declining to do so upon the facts of the case); *Sheet Metal Workers' Nat'l Pension Fund*, 2016 WL 128153, at *2 ("The Court agrees with those courts in the Second Circuit holding that Rule 45 requires only delivery which reasonably ensures actual receipt by a

4

witness."); *JP Morgan Chase Bank N.A.*, 2009 WL 1313259, at *2–*3; *Medical Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 2008 WL 3833238, at *2–*3 (S.D.N.Y. 2008); *Ultradent Prods., Inc.*, 2002 WL 31119425, at *3–*4 (service of subpoena on third party witness by certified mail sufficient to satisfy Rule 45); *Cordius Trust v. Kummerfeld*, No. 99-3200, 2000 WL 10268, at *1 (S.D.N.Y. 2000) (same); *First City, Texas–Houston v. Rafidain Bank*, 197 F.R.D. 250, 255 (S.D.N.Y. 2000), *aff'd*, 281 F.3d 48 (2d Cir. 2002); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 n. 1 (E.D.N.Y. 1997) (any means of service in accordance with New York procedural law deemed sufficient to satisfy Rule 45 requirements); *Hinds v. Bodie*, No. 84–CV–4450, 1988 WL 33123 (E.D.N.Y. Mar. 22, 1988) (holding non-party witness in contempt for failure to comply with subpoena that was served, with court's prior permission, by alternate means).

In light of the ambiguity surrounding Rule 45 and the fact that "if Rule 45 is read as to require personal, in-hand service, then the language in Rule 4(e) specifying that 'delivery' to the relevant individual be done 'personally' would be pure surplusage," *Cadlerock Joint Venture, L.P.*, 2010 WL 2346283, at *3, this Court "agrees with the reasoning of a growing number of courts that have held that 'delivery' under Rule 45 means a manner of service reasonably designed to ensure actual receipt of a subpoena by a witness. . . ." *Simmons v. Fervent Elec. Corp.*, No. 14-CV-1804, 2014 WL 4285762, at *1 (E.D.N.Y. Aug. 29, 2014) (collecting cases); *see Rand v. American Ins. Co.*, No. 11-CV-3040, 2012 WL 628321, at *1 n. 1 (E.D.N.Y. Feb. 27, 2012) (same); *Sheet Metal Workers' Nat'l Pension Fund*, 2016 WL 128153, at *2 (same); *see also Cordius Trust*, 2000 WL 10268, at *2 ("The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service. Because

5

alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the 'delivery' requirement of Rule 45 will be met. . . .").

Notwithstanding the above principles, courts which have permitted alternative means of service of a subpoena "have done so only after the plaintiff had diligently attempted to effectuate personal service." *Simmons*, 2014 WL 4285762, at *1 (collecting cases); *see Cadlerock Joint Venture, L.P.*, 2010 WL 2346283, at *3 (quoting *Cartier*, 2008 WL 552855, at *1) ("[A]ny alternate methods of service are available only after 'the [serving party] diligently . . . attempted to effectuate personal service and presented proof that sufficient notice would be [given].'") (second and third alternation in original); *Sheet Metal Workers' Nat'l Pension Fund*, 2016 WL 128153, at *2 (declining to sanction alternative service of subpoena where "[n]either the process server's affidavit nor plaintiffs' application demonstrate that plaintiffs diligently attempted to effectuate personal service. . . ."). Further, "[a]ny method of service of the subpoena has to comport with due process and be 'reasonably' calculated under the circumstances to provide [the witness] with both notice and an opportunity to present objections[.]" *Cadlerock Joint Venture, L.P.*, 2010 WL 2346283, at *4 (quoting *Cordius Trust*, 2000 WL 10268, at *2) (second alternation in original).

### 2. Federal Rule 45(g)

Federal Rule of Civil Procedure 45(g) provides as follows:

> **(g) Contempt.** The court for the district where compliance is required--and also, after a motion is transferred, the issuing court-- may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

Fed. R. Civ. P. 45(g). Rule 45(g) is the authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a non-party for failure to comply with a subpoena. "The Court

6

has the power under this rule to impose contempt simply on the basis of failure to comply with a subpoena." *Painewebber Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) (citing *Diamond v. Simon*, 1994 WL 10622, at *1 (S.D.N.Y. Jan. 10, 1994); *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991)); *Hunter TBA, Inc. v. Triple Sales*, 250 F.R.D. 116, 117 (E.D.N.Y. 2008); *Beare v. Millington*, No. 07-CV-3391, 2010 WL 234771, at *3 (E.D.N.Y. Jan. 13, 2010) (citing Fed. R. Civ. P. 45(e); *Daval Steel Products*, 951 F.2d at 1364) ("Absent an improperly issued subpoena or an 'adequate excuse' by the non-party, failure to comply with a subpoena made under Rule 45 may be deemed a contempt of the court from which the subpoena issued.  Indeed, the judicial power to hold a non-party who has failed to obey a valid subpoena in contempt is the primary mechanism by which a court can enforce a subpoena.") (internal citations omitted).  Therefore, a non-party who knowingly fails to comply with a duly issued and served subpoena for that individual's deposition and who provides no justification for his or her failure to appear may be found in contempt.  *See Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-cv-2902, 2014 WL 4308355 (S.D.N.Y.  Aug. 26, 2014); *Freund v. Weinstein*, No. 08 cv 1469, 2009 WL 4065585, at *1 (E.D.N.Y.  Nov. 23, 2009).

"Although Rule 45(g) permits a court to hold a person in contempt for failure to obey a subpoena 'without adequate excuse,' 'courts in the Second Circuit have often held that . . . a court should first issue an order compelling compliance with the subpoena.'"  *Kerr v. Thomas*, No. 14 CIV 9168, 2017 WL 485041, at *4 (S.D.N.Y. Feb. 3, 2017) (quoting *In re Application of Kingdom of Morocco*, M8-85, 2009 WL 1059786 at *2 (S.D.N.Y. Apr. 16, 2009)), *report and recommendation adopted sub nom. Kerr v. John Thomas Fin.*, 2017 WL 1609224 (S.D.N.Y. May 1, 2017); *see Sheet Metal Workers' Nat'l Pension Fund*, 2016 WL 128153 at *2 ("In civil litigation, it [is] rare for a court to use contempt sanctions without first ordering compliance with

7

a subpoena." (alteration in original) (citing Advisory Committee Notes to 2013 Amendment to Fed. R. Civ. P. 45); *see also Deleon v. Pichardo*, No. 15 CV 9804, 2016 WL 7373965, at *2 (S.D.N.Y. Dec. 12, 2016) (citing the same). The reason for this approach stems from the fact that "[a]n order of contempt leading to the impositions of sanctions is a drastic remedy." *Kerr*, 2017 WL 485041, at *4 (quoting *Sanchez v. Pathmark Stores, Inc.*, 04 Civ. 1159, 2009 WL 398103 at *1 (S.D.N.Y. Feb. 17, 2009) (internal quotation marks omitted)) (citing *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d at 145 ("[A] contempt order is . . . a potent weapon, to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.") (internal quotation marks omitted)).

Courts have issued orders to show cause requiring a non-party to physically appear and show cause why he or she should not be held in contempt and sanctioned for failure to appear at a deposition. *See Martinez v. City of Avondale*, No. CV-12-1837, 2013 WL 5705291, at *4 (D. Ariz. Oct. 18, 2013); *see also* Fed. R. Civ. P. 45(g) 2013 Advisory Committee Notes ("Often contempt proceedings will be initiated by an order to show cause, and an order to comply or be held in contempt may modify the subpoena's command. Disobedience of such an order may be treated as contempt."). However, as will be seen below, there is no subpoena in place requiring non-party Schneider to appear for a deposition.

### B. *Application to the Facts*

#### 1. **Preliminary Issue**

As a preliminary but very significant matter, Plaintiff's counsel issued a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action." The subpoena directs the recipient "to produce at the time, date and place set forth…the following documents, electronically stored information, or objects, and to permit

8

inspection, copying, or sampling of the material": "[a]ny and all cell phone videos, electronically stored information, photographs, films, slides, videotapes and/or any other forms of reproduction depicting events." In his motion, however, counsel repeatedly refers to the subpoena as one for "testimony" and requests that the Court compel non-party Schneider to appear at a subsequent date to be deposed. Nothing in the subpoena issued by counsel directs the non-party to appear for a deposition, so the Court has no basis to compel Mr. Schneider to show up for one. *See* DE 42 Ex. A. Attorney Morris should have properly served a "Subpoena to Testify at a Deposition in a Civil Action." That form subpoena directs the recipient to appear at a time, date and place to testify at a deposition, and includes a section which, when utilized, also directs the recipient to bring with him or her certain documents, electronically stored information, or objects, for inspection, copying, testing, or sampling. In view of these circumstances, the only enforcement power the Court has here is in regard to the documents and materials which counsel subpoenaed from Mr. Schneider. If attorney Morris wants to depose Mr. Schneider, he will need to serve him with a proper subpoena.

### 2.    Service of the Subpoena

In support of the instant motion, Plaintiff's counsel has attached the June 20, 2017 affidavit of process server Thomas Arleo whom counsel retained to effect service of the subpoena on Schneider. *See generally* June 20, 2017 Affidavit of Thomas Arleo ("Arleo Aff."), annexed as Exhibit B [DE 42-3] to Plaintiff's Pre-Motion Letter [DE 42]. According to the Affidavit, Arleo attempted to personally serve the subpoena on Schneider at his place of business, 338 Bayville Road, Bayville, NY 11709, on the following dates and times: 5/17/2017 at 9:40 a.m., 5/20/2017 at 10:15 a.m., 5/23/2017 at 12:35 p.m., 5/24/2017 at 11:43 a.m., 6/1/2017 at 7:26 a.m., 6/8/2017 at 3:30 p.m., and 6/12/2017 at 8:16 p.m. *See id*. Unable to find a witness

9

or person of suitable age and discretion with whom he could leave the subpoena, Arleo affixed the subpoena, with tape, on the entrance door of the property. *Id*. Arleo subsequently mailed a copy of the subpoena to Schneider via first class mail. *Id*. The mailing envelope bore the legend "Personal & Confidential" and did not indicate that the communication was from an attorney. *Id*. Arleo also states in the Affidavit that he spoke with Schneider who informed him that he "comes and goes" from the Bayville address. *Id*.

Before getting into the issue of whether substitute service is permissible here, Plaintiff must first establish that he made diligent attempts to effect personal service on Schneider. *See Sheet Metal Workers' Nat'l Pension Fund*, 2016 WL 128153, at *2. There is no bright line test or factors to determine diligence in attempting to effectuate service. *See Weifang Xinli Plastic Prods. v. JBM Trading Inc.*, No. 1:11-CV-2710, 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014), *aff'd*, 583 Fed. App'x 24 (2d Cir. 2014). Despite the lack of a bright line rule, however, "a rough standard of due diligence has emerged from the caselaw [within the context of service under Rule 4(e)] . . . [with a number of courts] require[ing] approximately three attempts at service, optimally on non-consecutive days." *Id*. (citing *Lemberger v. Khan*, 18 A.D.3d 447, 447, 794 N.Y.S.2d 416 (App. Div. 2005) ("[T]he Supreme Court properly concluded that the three attempts made by the plaintiffs' process server to personally serve him at his residence satisfied the due diligence requirement."); *Akler v. Chisena*, 40 A.D.3d 559, 833 N.Y.S.2d 397 (App. Div. 2007) (same); *Estate of Waterman v. Jones*, 46 A.D.3d 63, 66, 843 N.Y.S.2d 462 (App. Div. 2007) (" '[D]ue diligence' may be satisfied with a few visits on different occasions and at different times to the defendant's residence or place of business when the defendant could reasonably be expected to be found at such location at those times."); *Sartor v. Utica Taxi Center, Inc.*, 260 F. Supp. 2d 670, 672 (S.D.N.Y. 2003) ("service attempts made on Friday,

January 19, 2001 at 8:45 p.m., Wednesday, January 24, 2001 at 7 a.m., and Tuesday, February 20, 2001 at 6:40 p.m. constituted due diligence"); *Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 717 (S.D.N.Y. 1993) ("More than two attempts, including some that are during non-business hours constitutes due diligence.")). However, some courts find that "three attempts is not enough, if the process server does not make inquiries about the defendant's residence or employment." *Weifang Xinli Plastic Prods.*, 2014 WL 4244258, at *3 (citing cases). Ultimately, however, diligence is determined on a case-by-case basis pursuant to each case's set of unique facts but generally "can be satisfied when there are quality attempts at delivery that include times in which it is likely that the person to be served would be available." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 261-62 (E.D.N.Y. 2011) (citing *Nassau County v. Gallagher*, 43 A.D.3d 972, 841 N.Y.S.2d 696 (2d Dep't 2007))

      Here, as set forth above, Arleo attempted to personally serve Plaintiff at his place of business seven times over the span of nearly four weeks. Alreo's service attempts were made on weekdays and weekends, and in the morning, afternoon and evening hours. Moreover, Arleo spoke with Schneider via telephone and confirmed that he did in fact "come and go" from his business address. The Court finds that Arleo exerted diligent efforts to personally serve Schneider, and since his attempts were unsuccessful, alternative service is warranted. *See JP Morgan Chase Bank N.A.*, 2009 WL 1313259, at *3 (finding that a total of 9 service attempts was sufficient to permit substitute service of subpoena); *Rand*, 2012 WL 628321, at *1 n. 1 (three attempts found sufficient to justify alternative service); *but see Cadlerock Joint Venture, L.P.*, 2010 WL 2346283, at *4 (finding lack of diligence where all of process server's attempts fell "within the span of less than two weeks" during a holiday season).

11

The method of alternative service utilized must comport with due process, *see Cordius Trust*, 2000 WL 10268, at *2 (citing *S.E.C. v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987)), and be effected in a "manner . . . reasonably designed to ensure actual receipt of a subpoena." *Simmons*, 2014 WL 4285762, at *1 (collecting cases). Arleo affixed a copy of the subpoena to the entrance door of the property and then mailed a copy to Schneider via first class mail. The Court has some concerns over whether the method utilized by Arleo comports with due process. "Generally, posting of a notice on a door raises due process concerns because such notice may be easily removed by others." *Cadlerock Joint Venture, L.P.*, 2010 WL 2346283, at *4 (citing *Greene v. Lindsey*, 456 U.S. 444, 453, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982)); *but see Rand*, 2012 WL 628321, at *1 n.1. Moreover, first class mail has been deemed "inferior to certified mail in ensuring that the witness actually receives the subpoena." *See Cadlerock Joint Venture, L.P.*, 2010 WL 2346283, *4; *Beare*, 2010 WL 234771, at *4 (determining that the non-party had been properly served where "the first subpoena was affixed to his door and mailed to him after three attempts to serve him personally and the second subpoena was mailed to him by certified mail at his home"); *Cordius Tr.*, 2000 WL 10268, at *2 ("[A]lternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the 'delivery' requirement of Rule 45 will be met."). That being said, the method utilized does comport with N.Y. C.P.L.R. 308(4) and 2303. *See King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 n.1 (E.D.N.Y. 1997). Moreover, counsel for the plaintiff also mailed copies of the subpoena to Schneider on June 21, 2017 via overnight mail as well as first class mail. He also spoke with Schneider on June 21, 2017 and Schneider demanded, using vulgarities, that Arleo stop contacting him or he would "prosecute" counsel's client.

Notwithstanding any potential deficiencies in the method of alternative service utilized by Plaintiff, it is apparent from Schneider's remarks to counsel that he was aware of the subpoena and its contents. *See Sheet Metal Workers' Nat'l Pension Fund v. Rhb Installations, Inc.*, No. CV 12-2981, 2016 WL 128153, at *2 (E.D.N.Y. Jan. 12, 2016) (reservice not ordered where neither the process server's affidavit nor the plaintiff's application demonstrated that sufficient efforts were made to personally serve the deponent with the subpoena, but, nonetheless, there was evidence that the deponent had in fact received it). It is also evident that Schneider had no intention of appearing on June 23 and the Court has no reason to believe that the non-party's sentiment has changed in this regard.

### 3. Relevance and Materiality of Information Sought

Having determined that Schneider was served with the subpoena, the Court turns its attention to whether the "information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 3-1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec.23, 2003) (citing *Salvatore Studios Int'l v. Mako's Inc.*, No. 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug.14, 2001)). Plaintiff McDevitt alleges in the Amended Complaint, that he drove to 7 Hornleaf Lane, Holbrook, New York after receiving a distress call from his son's girlfriend, Brittney Barton, who resided at that address. Am. Compl. ¶¶ 24-25. Plaintiff directed Ms. Barton to call the police. *Id*. ¶ 32. Ms. Barton resided in an apartment in a multifamily housing unit. *Id*. ¶ 26. Schneider was present on the property and removed a door separating two units, which, according to Schneider he had the authority to do. *Id*. ¶¶ 29, 30. Plaintiff arrived at the property and learned that there was a disturbance and that a door was missing. *Id*. ¶ 35. In addition to Schneider, two other individuals were also on the property, namely, Suffolk County Police Officer Glenn Tarquinio and Debra Debek, who,

according to the Complaint, was either the owner of the property or was "in the process of foreclosure and/or sale of the property." *Id*. ¶ 27, 37. Plaintiff approached the three individuals and inquired into why a door was missing. *Id*. ¶ 39. Defendant Tarquinio proceeded to tell Plaintiff to "get the f*ck in the house." *Id*. Plaintiff complied and entered the house. *Id*. ¶ 40. Defendant Tarquinio purportedly began questioning Ms. Barton, and Plaintiff responded. *Id*. ¶ 45. The defendant officer told Plaintiff to "shut the f*ck up." *Id*. ¶ 47. Confused, Plaintiff again responded to Defendant Tarquinio, who then demanded that Plaintiff leave the house. *Id*. ¶¶ 48-49. Plaintiff responded that he was responsible for Ms. Barton's well-being. *Id*. ¶ 49. The officer proceeded to hit the Plaintiff in the face and across his body, and to "pummel" him. *Id*. ¶¶ 50-51. The officer threw the plaintiff against glass doors. *Id*. ¶ 52. In an effort to protect himself, the plaintiff assumed a defensive position on the ground but the officer continued to punch and hit him, and even lifted him and threw him to the ground. *Id*. ¶ 53-54. The assault continued. *Id*. ¶¶ 55-56. It is alleged that at this point Wayne Schneider entered the room and observed the defendant "panting and struggling." *Id*. ¶ 71. According to the Amended Complaint, Schneider also saw Defendant Tarquino hold Plaintiff at gunpoint. *Id*. ¶ 72.

In light of the allegations asserted in Plaintiffs' Amended Complaint, the Court finds that the information sought to be elicited through Schneider is both relevant and material.

### III. CONCLUSION

Based on the above discussion, Plaintiff's motion is GRANTED, in part, with respect to the document subpoena. However, Plaintiff's counsel must notify the Court by April 20, 2018 whether he intends to serve non-party Schneider with a proper subpoena for his deposition. Depending on the response, the Court will determine the next steps here.

**SO ORDERED.**

Dated: Central Islip, New York
       March 30, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge