FILED
CLERK

2:08 pm, May 09, 2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MICHAEL W. MCDEVITT,

                            Plaintiff,

        -against-

SUFFOLK COUNTY, SUFFOLK COUNTY POLICE
DEPARTMENT, SUFFOLK COUNTY POLICE
OFFICER GLENN TARQUINIO, in his individual
and official capacities, SUFFOLK COUNTY POLICE
OFFICER ALEJANDRO SANCHEZ, in his individual
and official capacities, SUFFOLK COUNTY POLICE
OFFICERS "JOHN AND JANE DOES # 1-10," in
their individual and official capacities,

                            Defendants.

------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
CV 16-4164 (GRB)(ST)

**GARY R. BROWN, United States District Judge:**

      Having filed a sweeping civil rights action against numerous defendants, plaintiff obtained a verdict of excessive force against one police officer (though he established no physical injury resulting therefrom) and prevailed on a well-supported claim of malicious prosecution. This victory led to a money judgment that was ultimately remitted to $233,100. Additionally, plaintiff prevailed on a *Monell* claim against Suffolk County resulting in solely nominal relief. His counsel now seeks an award of attorneys' fees and expenses totaling just under $800,000.

      The application can be divided into two: an easy part and a hard part. The easy part consists of an application by Scott Korenbaum, Esq., who largely functioned as appellate counsel. Mr. Korenbaum seeks approximately $45,000 for services which were appropriately

1

billed and sufficiently documented and to which the defense raises no significant opposition. The hard part encompasses intertwined applications by Cory Morris, Esq. and Victor Yannacone, Esq. (who, somewhat inexplicably, bills himself at various junctures as a partner, counsel, associate, and paralegal), and who together handled the trial in a most unorthodox manner. In support of this award, plaintiff's counsel has submitted more than a hundred pages of bills laden with block billing, double charges, unjustified fees for a post-discovery state FOIA litigation, and other irrelevancies, which tend to undermine the showing counsel attempts to make in meeting its burden. These nearly unintelligible applications are riddled with matters that are plainly incompensable.

At the same time, counsel plainly achieved a significant victory herein, entitling plaintiff to some attorney's fee award. For the reasons that follow, the Court awards the total sum of $187,270, consisting of the reasonably compensable attorneys' fees and expenses.

*Discussion*

*Relevant Facts*

The facts and procedural history are contained in this Court's Memorandum and Order, familiarity with which is assumed. *McDevitt v. Suffolk Cnty.,* 2024 WL 1270811, at *1-2 (E.D.N.Y. Mar. 26, 2024). One other fact requires discussion. During the trial, over which this Court presided, Mr. Morris appeared for plaintiff. His co-counsel, Mr. Yannacone, never appeared personally, but was available electronically for consultation with Mr. Morris concerning evidentiary and legal questions. To quote a famous television game show, Mr. Morris would routinely "phone a friend," to get assistance throughout the trial. *See* Tr. 769, 824. The Court permitted this unusual arrangement given Mr. Morris's relative inexperience in trial matters, a fact that bears heavily on the instant application.

2

*Standard for the Award of Attorney's Fees*

As this Court has previously held:

Title 42 U.S.C. § 1988 authorizes an attorney's fee award to prevailing plaintiffs in a civil rights lawsuit filed pursuant to 42 U.S.C. § 1983. *James v. City of Boise*, 577 U.S. 306, 306, 136 S. Ct. 685, 193 L.Ed.2d 694 (2016); *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 550, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "When a plaintiff succeeds in remedying a civil rights violation ... he serves 'as a private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833, 131 S.Ct. 2205, 180 L.ED.2d 45 (2011) (citations omitted). As such, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (*quoting Hensley*, 461 U.S. at 433, 103 S.Ct. 1933); *see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dis*t., 489 U.S. 782, 791, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). The Supreme Court has described this standard as "generous" since nominal damages of one dollar are enough to bring plaintiff across the "prevailing party" threshold. *Farrar*, 506 U.S. at 112, 113 S.Ct. 566; *see also Barbour v. City of White Plains*, 700 F.3d 631, 634 (2d Cir. 2012) (citing *Farrar*, 506 U.S. at 115, 113 S.Ct. 566).

…

"Both [the Second Circuit] and the Supreme Court have held that the lodestar— the product of a reasonable hourly rate and the reasonable number of hours required by the case–creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue*, 559 U.S. at 553, 130 S.Ct. 1662; *see also Millea*, 658 F.3d at 167. "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdu*e, 559 U.S. at 551, 130 S.Ct. 1662. "The reasonable hourly rate is the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly v. City of New York,* 934 F.3d 222, 231 (2d Cir. 2019).

"The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Maldonado v. Srour*, No. 13-CV-5856 (ILG)(JO), 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016). "The moving party 'must support its application by providing contemporaneous time records that detail "for each attorney, the date, the hours expended, and the nature of the work done.' " " *Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015

> WL 9592518, at *2 (E.D.N.Y. Dec. 31, 2015) (*quoting N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Feltzin v. Union Mall, LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (citation omitted).

*Jenkins v. Cnty. of Nassau*, No. CV 19-557 (GRB)(SIL), 2021 WL 11471153, at *1–2 (E.D.N.Y. 2021).

Though the lodestar method represents the usual starting point for an attorney's fee analysis, the Court must then scour submissions for a variety of evils, which include double billing, block entries, matters being performed by the wrong level provider (e.g., an attorney performing paralegal work), and unreasonable hours expended. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise"). Yet, such an exercise cannot be permitted to degenerate into a separate dispute. *Fox*, 563 U.S. at 838, 131 S.Ct. 2205 (citation omitted) ("[T]he determination of fees 'should not result in a second major litigation'"). "We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

To quote former SDNY District Judge William Pauley, "[a]s a concession to the mortality of judges, the law does not require a line-item review of fee applications." *O'Toole v. Allied Interstate, LLC*, 2012 WL 6197086, at *1 (S.D.N.Y. 2012). The Supreme Court has commanded:

> trial courts undertaking that task need not, and indeed should not, become green-eyeshade accountants (or whatever the contemporary equivalent is). The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. Accordingly, a district court may take into account its overall sense of a suit, and

4

may use estimates in calculating and allocating an attorney's time. [ ] And such judgments, in light of the trial court's "superior understanding of the litigation," are entitled to substantial deference on appeal.

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017).  These principles prove especially apt here, given the contours of this litigation, the unusual, if not unique, manner in which the trial was conducted, and highly problematic aspects of the fee petition.

*Fees Incurred by Scott Korenbaum*

Mr. Korenbaum's application is a veritable model of professionalism.  His hourly rate of $500 per hour is supported not only by the results of the case, but specifically by a sworn declaration of Fred Brewington, Esq. – a lawyer well known to, and respected by, this Court.  Mr. Brewington extols Mr. Korenbaum's experience of 35 years, devoted almost exclusively to civil rights and police misconduct litigation.  DE 193.  Mr. Brewington describes Mr. Korenbaum as "recognized in the civil rights community as one of the pre-eminent appellate attorneys."  DE 193 at 27.  Mr. Brewington surveys the current market rates of civil rights counsel, concluding that Mr. Korenbaum's rate of $500 per hour is reasonable.[1]  *See* DE 193 at 29.  Moreover, Mr. Korenbaum exercised billing judgment in limiting his hours to compensable matters.

Defendants raise only one argument in an effort to reduce Mr. Korenbaum's requested $500 hourly rate.  Citing this Court's decision in *Anderson v. County of Suffolk*, No. 09-CV-1913 (GRB), 2016 WL 1444594 (E.D.N.Y. Apr. 11, 2016), which relied on *Medina v. Donaldson*, No. 10-CV-5922 (VMS), 2015 WL 77430 (E.D.N.Y. Jan. 6, 2015) counsel argues that top-tier litigators are limited by the forum rule from receiving more than $450 per hour.  DE 195 at 35.

---

[1] Notably, Mr. Brewington makes no such assertions on behalf of Messrs. Morris and Yannacone.

5

But given that those cases are more than a decade old, even a simple adjustment for inflation would warrant an increase to more than $500.

As such, the Court finds that, in this case, Mr. Korenbaum's requested rate and hours are reasonable.

*Rates for Cory Morris*

Mr. Morris seeks $450 per hour, claiming that such payment "represents a reasonable hourly rate for Mr. Morris," and a significant reduction from his "regular" hourly rate of $750, which, he claims, was recently raised to $925. DE 191 at 16; DE 194 at 9-10. Interestingly, Mr. Morris's claimed regular rates far exceed those of Mr. Brewington, who notes that his regular rate is $600 per hour. DE 193 at 23. Though a solo practitioner, Mr. Morris oddly refers to himself as a "partner" at his firm. DE 194 at 10.

Mr. Morris has previously appeared before this Court in several matters. His performance and compensation varied greatly. In 2016, this Court awarded Mr. Morris, then dubbed a "junior associate" Mr. Brewington's firm, $150 per hour in a civil rights case. *Anderson*, 2016 WL 1444594, at *5. In that same matter, the Court awarded Mr. Brewington, one of the preeminent civil rights attorneys in this region, an hourly rate of $450.[2] *Id.* By 2019, Judge Bianco awarded Mr. Morris, then an associate, $225 per hour for his work (slightly more

---

[2] In their filings, plaintiff's counsel attacks what it characterizes as the "ossification" of attorney compensation rates in the EDNY in civil rights cases, which largely relates to a perception that judges have been reluctant to award more than $500 per hour. To support a purported "unwillingness of the judges in this District to acknowledge and compensate fairly" civil rights attorneys, counsel cites (among other things) the undersigned's decade-old decision in *Anderson*, granting Mr. Brewington $450 per hour rather than the $500 requested. DE 191 at 11-13. While characterizing this Court's rulings as exemplary of unfairness could be seen to score points for temerity if not diplomacy, the attempted comparison of Mr. Morris's skills to attorneys like Mr. Brewington, Avi Moskowitz and Michael Spiegel – highly experienced advocates – proves unworthy of further comment.

6

than the $200 per hour requested). *Crews v. Cnty. of Nassau*, No. 06-CV-2610 (JFB)(GRB), 2019 WL 6894469, at *13 (E.D.N.Y. Dec. 18, 2019). In one matter, after he transitioned to his own firm, the undersigned noted the following concerning Mr. Morris's work:

> Plaintiffs' counsel responded in a flurry of massive, disorganized filings. This response bears some comment, as the filings by Plaintiffs' counsel have proven far below expectations, unnecessarily increased the costs and time required by Defendants' counsel and the Court to resolve these matters and, at times, represented a violation of Court rules and orders.

*Snyder v. Cnty. of Nassau*, 531 F. Supp. 3d 609, 612 (E.D.N.Y. 2021).

During the trial, he labored admirably, if at times naively, often exposing his lack of experience. In his filings, he tacitly acknowledges the same. DE 191 at 18 ("Mr. Morris is not necessarily as seasoned as other attorneys…."). It is no secret that Mr. Morris was learning on the job, as he openly admitted. *See, e.g.* Tr. 765 ("I have learned more about *Monell* over the past 72 hours than I ever thought I would . . . I will be pleading cases much differently after this one."). Unquestionably, he made rookie mistakes. *See, e.g.* Tr. at 839 (continuing to litigate false arrest despite failing to prove that claim); 861-62 (making basic mistakes concerning objections and courtroom conduct); 914 (asking plainly improper questions); 1002 (expecting to admit evidence after resting case).

There's nothing shameful about inexperience. The question here is the value of the services provided. All to say that a paying client would not compensate a relatively inexperienced lawyer at the $450 rate sought.

After considering the relevant factors, including the significant but limited relief obtained and the other matters examined herein, the Court will calculate fees for Mr. Morris at the rate of $300 per hour.

*Rates for Victor Yannacone, Esq.*

7

Mr. Yannacone has been a lawyer since 1959. He has handled criminal defense, corporate in-house work, real estate transactions, environmental law, and mass torts. *See* DE 192. Despite a long and respectable career, Mr. Yannacone provides the Court with precious few relevant examples of his rates and claims to fix a rate depending on "the nature of the case" and "according to the community rates." DE 192 at 9. Mr. Yannacone styles himself an "American Barrister," and uses an "alternative" billing method that he "developed" for a corporation during the 1970s. DE 192 at 13. This billing system, unrecognized in law, is described as follows:

> As a solo practitioner, my hourly billing rates reflect the level of service provided: $750 for services that are regularly performed by partners and senior attorneys "of counsel," $450 for services usually delegated to experienced Associates, and $250 for the services of skilled paraprofessionals.[3]
>
> As a solo practitioner, there are no Associates or paralegals whose time can be recorded and billed; however, by denominating the functional level of the service provider performing a particular task or service, time/task/service provider billing reflects their functional existence and contribution to each case.

DE 192 at 13-14. So, Mr. Yannacone's billing "system" is both imaginative and, well, imaginary; as he completes each task, he decides (as though suffering from multiple personality disorder) which fictional member of his staff would have performed that task, and bills accordingly.

A few examples of Mr. Yannacone's "innovative" billing system demonstrate its absurdity: On February 18, 2023, Mr. Yannacone – in his self-declared role as an associate – billed $772.50 for reading a copy of *Jimmy the King*, a mass market book about former police chief James Burke. DE 192 at 26. A month earlier, acting as an associate, Mr. Yannacone billed $262.50 and $360 for drafting writs to produce former District Attorney Thomas Spota and his top aide Christopher McPartland, both of whom were in federal custody, without any reason to

---

[3] Importantly, this Court would not award any of these rates under these circumstances.

8

believe that they would agree to testify. *Id.* Similarly, Mr. Yannacone, now "of counsel," billed nearly $4,000 to draft a "trial script" for former District Attorney Timothy Sini and Legislator Rob Trotta, neither of whom testified at trial. *Id.* at 32. Finally, it appears that Mr. Yannacone, this time cast in the role of a paralegal, charged $408 to draft an entirely superfluous subpoena for the defendant. DE 192 at 26-27. Based on such nonsense, Yannacone presents the Court with an inscrutable "blended" billing rate for himself – a misapplication of the concept by which firms sometimes generate a single rate for multiple providers – which inexplicably ranges from $376 to $510. DE 192 at 3-4. While one could write a hefty essay about the ways in which such billing is inappropriate, this "system" proves unhelpful to a Court endeavoring to fix an appropriate hourly rate.

Left rudderless, the Court will award Mr. Yannacone $300 per hour for those services that the Court finds compensable on this application.

*Incompensable Items Billed by Morris and Yannacone*

Cataloging the complete list of inappropriate items billed by Messrs. Morris and Yannacone in the hundreds of pages of invoices submitted represents a Herculean task. Fortunately, the law provides that the Court need not do so and provides an alternative mechanism for resolving the issues. Several examples will suffice. First, counsel records extraordinary sums for post-discovery Freedom of Information Law (FOIL) litigation conducted in state court. Given the pendency of federal litigation, and the extraordinary discovery devices afforded to federal litigants,[4] counsel's decision to commence a post-discovery FOIL case, rather

---

[4] *In re BitTorrent Adult Film Copyright Infringement Cases,* 296 F.R.D. 80, 89–90 (E.D.N.Y.), *report and recommendation adopted sub nom. Patrick Collins, Inc. v. Doe 1,* 288 F.R.D. 233 (E.D.N.Y. 2012) ("Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes").

than seek timely and less costly redress in this Court, defies all logic.  Disturbingly, Mr. Morris already sought fees for this work in the state court litigation.

The invoices submitted are infested with other inappropriate matters, several of which have already been mentioned.  Some references are simply baffling, including countless entries referring to communications with *Newsday*, research relating to an appeal on behalf of the newspaper, and a "Meeting with National Police Accountability Project Concerning the McDevitt 50a Scenario."  DE 192 at 33, 45;  DE 194-1 at 3, 7-9.  Others are plainly outside of the functions reasonably performed in connection with this case, including charges for "amicus issues" pertaining to the conviction of former DA Spota.  DE 192 at 34.

Vague and incomprehensible entries also dominate.  Mr. Yannacone's invoices include entries such as "Monday afternoon strategy," "parse Reform&Reinvention Report," "consideration of Trotta finesse," "Litigation Chronicle" and "ten commandments of depositions," the import of which remain a mystery.  DE 192.  In addition, there appears to be double billing: while Yannacone assures the Court that when he and Morris had strategy meetings, only one attorney would bill.  Yet this practice was inconsistent.  *See, e.g.* DE 192 at 36 and DE 194-2 at 44 (both attorneys billing for a deposition strategy meeting on 7/30/2018).  Moreover, in observing counsel during the trial and related proceedings, nearly all work performed was done in a duplicative and excessive manner, as Mr. Yannacone was regularly checking the work of Mr. Morris.  *See Ortiz v. City of New York*, 843 Fed. Appx. 355 (2d Cir. 2021) (upholding district court's determination that a fee for duplicated work was excessive).

Additionally, there is a substantial gap between the much-applauded "zealous" advocacy

10

and blatant zealotry, and Messrs. Morris and Yannacone sometimes failed to recognize this distinction.[5]  In this case, this failure manifested itself in an unwarranted focus on the investigation and conviction of the former Suffolk County Police Chief and former Suffolk County District Attorney on public corruption charges.  Those events, though certainly newsworthy, were largely, if not entirely, irrelevant to the issues in this case.  Counsel wasted much time, effort, and attention on these diversions.  While plaintiff ultimately obtained a *Monell* verdict, that determination proved a nominal victory with no practical implications.  Counsel took on this additional work and continued this quixotic endeavor even after having been cautioned that, consistent with Second Circuit caselaw, such efforts would likely reduce any attorneys' fee award.  Tr. 756-57.  These facts further support a reduction of the fees sought.

Finally, though successful on a malicious prosecution claim, and, less significantly, an excessive force count, most of the claims pursued by plaintiff failed.  Despite the broad allegations, numerous defendants, and sweeping litigation approach, plaintiff's proof was limited to certain actions of a single officer.  Moreover, the *Monell* claim against the County was pursued beyond the point of reason.

Taken together, these factors weigh in favor of a substantial across-the-board reduction of the hours sought.  The Court will reduce the hours sought by Morris and Yannacone by 70%, as a reasonable approximation of the overbilling in the applications.  *See Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (affirming district court's discretion to apply across-the-board reduction); *Piccolo v. Top Shelf Prods., Inc.*, 541 F. Supp. 3d 256, 258 (E.D.N.Y. 2021) (applying 90% across-the-board reduction); *Vega-Ruiz v. Northwell Health Sys.*, No. 19-

---

[5] The *Oxford English Dictionary* defined zealotry as "[b]ehaviour or belief characteristic or typical of a zealot; esp. immoderate or fanatical devotion to a religious or political cause or ideal." https://www.oed.com/dictionary/zealotry_n?tab=meaning_and_use#13667397.

CV-537 (GRB)(AYS), 2023 WL 8003366 at *2 (E.D.N.Y. Nov. 17, 2023) (applying 70% across-the-board reduction).  Thus, the Court will award the following attorney's fees:

| Provider | Hours Sought | Adjusted Hours | Rate | Total |
|---|---|---|---|---|
| Scott Korenbaum, Esq. | 95 | 95 | $500 | $47,550 |
| Cory Morris, Esq. | 892 | 267.6 | $300 | 80,280 |
| Victor Yannacone, Esq. | 656 | 197 | $300 | 59,040 |
| Total | | | | $186,870 |

*"Paralegal/Law Student" Expenses*

In his sworn declaration, Mr. Morris represents:

> I prepare my cases for trial personally without the aid of Associates or paralegals. In this case, I exercised billing judgment and did not bill for services that might have been performed by a paralegal, even though, of necessity, I performed those services.

DE 194 at 19.  This is troubling from several perspectives.  First, Mr. Yannacone frequently billed for performing paralegal services, particularly during trial, making Mr. Morris's sweeping representation ring hollow.  Second, even a cursory review of Mr. Morris's billing reveals that the representation is untrue.  *See, e.g.,* DE 194-2 at 6 (billing – at a "partner" rate, for "Summons Executed/Filing of Same.").

And yet, while disavowing the assistance of paralegals in his work, Mr. Morris concurrently demands $13,225.50 for "law student/paralegal work" at a rate of $250 per hour. DE 194 at 3.  This charge is predicated entirely upon a document entitled "Law Clerk and Paralegal Time Journal."  DE 194-4.  Nowhere in his massive submission does Mr. Morris provide the required documentation identifying the providers or detailing their experience. Thus, the request for $13,225.50 for such work is denied.

12

*Expenses*

While Mr. Morris attempts to recover several thousand dollars in fees and expenses, the documents provided fail to demonstrate that such expenses were appropriately incurred. For example, he paid process servers to attempt to serve subpoenas on defendant's expert and witnesses not listed in the pre-trial order and some of these costs appear to relate to the state FOIL litigation. The Court will award the filing fee of $400 for commencing this case, as said cost obviously was incurred.

**Conclusion**

Based on the foregoing, the Court hereby awards total attorney's fees of $186,870 and expenses of $400. The motion for fees and costs are denied in all other respects.

Dated: Central Islip, New York
      May 9, 2025

                                          /s/ Gary R. Brown
                                          GARY R. BROWN
                                          United States District Judge